Mr. Sturgill, you're on the line. I am, Your Honor. And Ms. Bierman, you're on the line. Yes, good morning, Your Honor. Good morning. Mr. Sturgill, you can proceed. Good morning. May it please the Court, I'm Lowell Sturgill from the Department of Justice, representing the appellant Deborah Schult and Jackie Sapanek. They are two Federal Bureau of Prisons employees who have been sued in their individual capacities for damages. We believe the Court should reverse the decision below here for two separate reasons. First, the Supreme Court's decision in Abbasi precludes recognizing a Bivens remedy in this new context. And second, even if there could be a Bivens remedy here, these defendants are entitled to qualified immunity or at least a remand on that issue because the District Court failed to properly analyze whether the defendants violated any clearly established right. Beginning with Abbasi, Abbasi noted that even small differences can create a new Bivens context and that the Supreme Court has recognized the Bivens remedy only in three cases, Bivens, Davis, and Carlson v. Green. Bivens and Davis are plainly in a posit and significantly, Abbasi characterized the claim in Carlson as, quote, a failure to provide medical care. So this case does not involve a claim for a failure to provide medical care. Instead, it resembles the claim in Abbasi that a prison warden failed to prevent prison guards from abusing pretrial detainees. Abbasi held that that claim was a new context. And we believe for the same reasoning, the Court should hold the same thing here, even though here plaintiffs bring an Eighth Amendment claim because in Hernandez v. Mesa, the Supreme Court made it clear that and there can be a new Bivens context in a case like this, even though. Abbasi was a Fifth Amendment case, right? And there were claims against high-ranking Department of Justice officials, right? Right. So there were two claims. So that was different from Carlson. So that's right in part, Your Honor. There were two claims in Abbasi. One was the one you just described. And the second one was a separate claim against the prison warden. They alleged that he allowed guards to abuse inmates. And that was under the Fifth Amendment rather than the Eighth. But again, our argument is that that shouldn't make a difference because in Hernandez, the Supreme Court says that merely because a different constitutional right is asserted is not enough to make something not controlled by, you know, a case like Abbasi. So here... So why isn't the deprivation or the failure to provide adequate medical care, why isn't that a condition of confinement, just like some of these other things, the temperature in the cell, the protection against other inmates? Right. So we have several answers to that. One is that, I think, first of all, the Supreme Court seems to see it that way. That's what it said in Abbasi. Actually, it said that twice, once on page 1859, the other on page 1864. So the court itself didn't leave any question about that. But second, non-medical conditions of confinement cases raised heightened separation of powers concerns because they would subject prison officials to individual liability covering every aspect of prison life. And that would be a substantial extension of Carlson. And just for an example, I would point the court to this, to the decision of the Second Circuit in Gonzales, which was pretty recent. And there the inmate alleged that he was denied access to outdoor recreation, used clothing, and he complained that he was given shoes without laces. So under the plainest view of the law, these are all conditions of confinement. And now it's going to be open season on federal Bureau of Prisons employees and their individual capacities. And what about Farmer? The Farmer case? What about the Farmer case? I mean, there was Eighth Amendment claims alleging that prison officials failed to adequately protect an inmate from harm by others. Right. So two points about Farmer. First of all, the Supreme Court in Abbasi, and then later in Hernandez, did not include Farmer in the list of three cases where the court said that the court had acknowledged and recognized Bivens cases. So the fact that the court omitted Farmer is telling. And I think that's, and then Farmer itself did not address the Bivens question at all. All Farmer did was address whether the claim under the substantive law of the Eighth Amendment applicable there. So again, Farmer. It was a Bivens case though, wasn't it? Absolutely, Your Honor. We've cited cases to say that just because the Supreme Court doesn't address a question doesn't mean that it implicitly resolves it. The context I'm most familiar with is jurisdictional issues, which there's a clever line that the court says there's no drive by a jurisdiction. So if the court doesn't address it, it doesn't mean that it's saying that there is. And really, it's the same principle here. Farmer didn't address the question of whether there's a Bivens remedy. So it's not fair to say that the court held that. And it's certainly not the case, as the plaintiffs argue, that in order to rule for defendants here, the court, this court would have to overrule Farmer. I mean, that really is just not the right way to look at it. May I ask a factual question? This is a suit for seeking to impose individual responsibility or liability on the warden. Is there anything in the complaint or in the record otherwise that indicates how a decision is made as to, I mean, how many cells there are and how many the warden has to deal with the situation if he has sent X number of prisoners when there are less than X number of cells in the facility that the warden is put in charge of? So, honestly, I don't have a record for you. My understanding is that those decisions are made at a pretty high level. And they're made based on determinations of how do you how do you fit the number of inmates you have within the institution, but also do it in a humane way. And actually, the record does show, we've argued in our brief and below, that experts went into the institution and found that it was, as a whole, it was a very well run institution, treating inmates well. And here, I think one thing to point out that's important is the plaintiff doesn't allege that he was physically injured. Well, he does allege that the jury found that he was not, he didn't sustain any injury, physical injury with respect to the cell condition. So, that's a significant fact that's different from... Yeah, I mean, I'm just wondering, I don't know whether this is relevant to whether it's a new Bivens context or not. But it seems to me that in some of the other cases that have gone in the past, that the person being sued had the ability to do otherwise than was done. And I'm just wondering if that is so here, if there's been any evidence presented or allegation made by the plaintiff, that it was the defendant, I guess I'll ask them this too, that it was the six-person cell rather than having two of the people taken out and two other cells, whichever they might be, made more crowded. You see what I'm saying? Yes, Your Honor. So, I think the answer to that is that the jury did make a determination that both of the defendants here were at least aware of the situation, that they both had authority to remove Walker from his cell and give him a different cell assignment. And that was the basis on which the jury found for Walker. We disputed both of those issues, but we're not disputing those facts on appeal. Yeah. Well, but I mean, clearly, the warden would have the authority to move the plaintiff to another cell. The question is, would that cell look like and would that become overcrowded? Or if it wouldn't be, would that be because some other prisoner had to be moved into the six-man cell? You see what I'm saying? I mean, it's one thing to say the warden was aware. Of course, the warden is aware of how many people are in which cells and who they are. And it's not just a question of, could he choose to move one prisoner from one cell to another cell? Of course, those things are true. But is there any evidence in this case that there was some way in the warden's control of seeing to it that this cell could be made less crowded without creating an equivalent overcrowding situation in some other cell? Honestly, I'm not aware of the answer to that. You're out of time in any event. You have some time for rebuttal. Let's hear from Ms. Beerman. Yes. Thank you, Your Honor. And may it please the court. This case is about the mistreatment of a prisoner. And before I get into that, I just want to quickly address what you were asking the other side about the record. And there is ample evidence in the record that the warden and the counselor in this case could have alleviated Mr. Walker's situation and not by creating an additional unconstitutional condition for somebody else. For example, on page 220 of the trial concerning what wardens and other prison officials are supposed to do when faced with an overcrowded situation. And I think it's important to remember that the conditions and inmate experience must be taken in their totality. And that includes the length of time someone experiences conditions like these. And in this case, Mr. Walker was held in an abhorrently crowded cell for over two and a half years. And there was evidence presented at trial that he was in that cell much longer than most other inmates. Over 70% of his cellmates were in the cell for less than six months. And 21% were in the cell for just less than a week. So this case is very specific. To follow up on Judge Lynch's question to your colleague on the other side, is there evidence that there were other options, there were other cells, were there empty cells? I don't believe there is evidence about empty cells. However, there was a lot of evidence presented at trial about the system defendants put in place to move inmates. And at trial, it was presented that the way they decided which inmates would move out of six man cells was deferring to inmates in two man cells who had an open spot. So instead of assigning inmates on a fair and equitable basis to more desirable cells, they actually let the inmates who were already in two man cells pick their new cellmate when a spot opened up. So for somebody like Mr. Walker, he just remained in cell 127, the six man cell, much longer than other inmates. Is there any evidence that this was somehow punitive or was it done out of some hostility to Mr. Walker? Yes, Your Honor. On page 219 and 220 of the JA, there is a quote from the trial where defendants of panic said that Mr. Walker was a huge, huge inmate who she presumed could take care of himself. And that's why she wasn't concerned with him staying in the six man cell. And so I just wanted to make that clear that all of that evidence was presented at trial and the court did rely on it in its post-trial opinion. And just to touch on a few other points that came up during the argument, there was a question about why the Fifth Amendment was different in a BACI and why that constituted a meaningful difference in terms of the new context analysis. And of course, a different amendment could constitute a new context. The Fifth Amendment in particular is governed by different standards than an Eighth Amendment claim. So it's not surprising that the court in the BACI found that could be a meaningful difference. For example, in the Fifth Amendment, the key difference is that pretrial detainees cannot be punished at all, whereas post-trial, post-convicted prisoners cannot be subjected to cruel and unusual punishment. And the court in Farmer, when it outlined the deliberate indifference standard applicable to Eighth Amendment claims, focused on the language of the Eighth Amendment and in particular the cruel and unusual punishment clause. The Fifth Amendment deliberate indifference standard was much less developed when the BACI was decided. For example, even within the Second Circuit, up until 2009, there was an intra-circuit split regarding the deliberate indifference standard applicable to pretrial detainees, with one line of cases holding that the deliberate indifference prong was subject to an objective test and another holding that it was subjective, like the court applied to the Eighth Amendment claim in Farmer. And in 2015, the Supreme Court held in Kingsley that pretrial excessive force claims should not be analyzed under the same standard as Eighth Amendment excessive force claims, which actually caused the Second Circuit to reassess and to change the standard applicable to pretrial conditions of confinement in 2017, months before a BACI was decided. So at the time a BACI was decided, there really was less clear guidance on Fifth Amendment pretrial conditions of confinement claims and the standard applicable to them. Whereas for Eighth Amendment claims, the standard has long been set. The Supreme Court detailed it in Farmer back in 1994, and there was ample guidance. How do you respond to the argument that in a BACI, the court did not mention Farmer? Sure. That's a good question, Your Honor. I think in a BACI, the court did not mention Farmer because Farmer wasn't a new context. Farmer didn't extend the Bivens remedy beyond what the court had already ruled in Carlson. Defendants make this big distinction between claims alleging medical care violations and claims alleging other conditions of confinement, but that's nowhere found in Carlson itself or in other Supreme Court cases. When a BACI says that Carlson addressed a failure to treat a medical condition, it was simply describing the facts of the case. Its entire analysis on the Fifth Amendment claim against the wardens in a BACI centered around the difference between the Fifth Amendment and the Eighth Amendment. The court never mentioned that one of the differences was that Carlson was for medical care and the BACI is not. I think also to one of the questions that was asked at the beginning, medical care is certainly a condition of confinement. As the Supreme Court noted in Wilson, there's no difference between the standards applicable to medical care or conditions of confinement. They both require an objective test, which means the deprivation has to be sufficiently serious. It has to deprive the inmate of his basic human needs, health, or safety, which is exactly what the jury found occurred in this case. Defendants had to act with deliberate indifference. As I mentioned before, Farmer said that the deliberate indifference standard means that the defendants know that it's occurring and they must disregard the risk, the substantial risk of serious harm that was caused by that. The jury also found that defendants were here as well. Ms. Thurman, are you going to address the qualified immunity issue? One of the things that I'm wondering about is, assuming for the moment that we find that this is not a new context, which seems to me a rather difficult question based on a somewhat ad hoc bunch of Supreme Court cases that exhibit much hostility to Bivens and not necessarily much clarity as to when Bivens is limited and when it's not. With respect to qualified immunity, we've got some fairly specific issues, don't we? In Rhodes, the Supreme Court held that an amount of square footage per prisoner in a cell that was approximately, or very close to, the same as what was at issue here was not an Eighth Amendment violation, overcrowding violation at all. Now, I'm perfectly open to the argument that six people in a cell each having, whatever it is, 190 square feet or whatever, is much worse than two people in a cell each having the same amount of square feet. But that's a merits argument and it doesn't tell us that a warden should absolutely know in advance that there's too little space here when doing the measurements The main thing that he knows is that this amount of open space per prisoner is constitutional under Rhodes. So help me out with this. Sure. So I have three responses to that, Your Honor. The first is, as you know, Rhodes was about two people and there's a clear difference between housing two people in a cell and housing six people in a cell. And the violation here was obvious. We're talking about the deliberate indifference to the mistreatment of a prisoner. Excuse me, I'm sorry. What says that it's mistreatment? I understand the argument that six people is different from two people, but isn't that looking solely at the question of crowding per se? I realize there are other issues in the case. How would a warden be on notice that it is clearly established that 190, I'm sorry, probably misrepresenting a number, X, whatever the number is, is okay per prisoner if it's two people, but not okay if it's 12 in a dormitory or not okay if it's six in a cell? Well, the conditions have to be considered in their totality and courts have held for years that housing multiple inmates in one cell can lead to an Eighth Amendment violation if combined with other adverse conditions. The only other adverse condition that the jury found here was threats of violence. Well, we disagree with that. I think the jury found in the verdict form that Mr. Walker suffered an Eighth Amendment violation. The verdict form did not ask the jury to separate Mr. Walker's claims. It said, mark all that apply, right? Well, that was in the special interrogatories, which the jury answered after his liability. Sure, but the jury was told, I'm asking you certain questions in order to deal with a matter that I as a judge have to deal with, and so I want more specificity. List all that apply of the things that he alleges that you applied, and these are the two that they checked. Well, I have two responses to that, Your Honor. The first is, it didn't say list, well, it does say mark all that apply, but it doesn't say mark all that existed. It says, which of these conditions denied him his basic life necessity or posed a substantial risk of serious damage to his health or safety, which is the Eighth Amendment. If the conditions prevailed in the cell, in the jury's view, they did not deny him those rights. They were not sufficiently severe as to meet that standard. Not on their own, but it doesn't mean that the jury didn't consider it in the totality of the circumstances that led to their overall finding that the conditions as a whole violated Mr. that in advance as to whether conditions in their totality that the jury may or may not find existed are sufficient to constitute a violation. That seems even less susceptible to a clearly established right because then every case stands completely on its own ground. I think, Your Honor, there's a couple of ways for defendants to have known in this case. One is that the conditions that existed in cell 127 violated several BOP standards and ACA standards, including the amount of space just on its own. The second- Wouldn't that have been true in Rhodes as well? I mean, can you explain to me exactly what the standard is? Is there a different standard for two-person cells and for six-person cells? Your Honor, I'm not sure about that. I believe that for multiple occupancy cells, at least under the American Correctional Association, that the standard here was well above the amount of space Mr. Walker had. And the standard- But then would that not also apply in Rhodes? That's what I'm trying to get at because we're looking for how is the warden to know what violates the Constitution, not how is the warden to know what violates some non-governmental standard of appropriate prison cell construction. That may be so, but the issue is what violates the law that the warden has to know. Yes. And one thing I just wanted to note again is that even accepting the special interrogatory for- even accepting that the jury only found these two conditions existed, one of the conditions the jury checked off was threats of violence and lack of safe living conditions. And there are many, many cases holding that prison officials are constitutionally bound to provide safe living conditions for inmates. But do any of those cases talk in terms of it's a constitutional violation for a warden to make a judgment that there isn't a sufficient threat? You mentioned, for example, that the warden thought that Mr. Walker was able to protect himself and he was in this cell for two plus years. And despite his concern about there being fights or there being tension in the cell, nothing bad ever happened to him in terms of physical violence, right? Well, no, that's not exactly true, Your Honor. In fact, at one point, Mr. Walker was almost stabbed in the head stemming from an inmate peeing on the floor of cell 127. And so, yes, he ducked and he avoided it, but defendants should not get the benefit of his quick reflexes. He could have very seriously been injured. And that is a direct result of the conditions in cell 127. All right. Thank you. You're- we've kept you talking for a long time. Let's hear from Mr. Sturgill. You have one minute for rebuttal. Thank you, Your Honor. I guess I'd like to since we didn't have a chance to discuss that and make just a few points. First of all, we agree that our defendants would not have been on notice that either the cell size or fear of violence claims would have violated- would have clearly violated the Constitution. That inquiry would focus on the case law. Rhodes is an important case. There are other cases we've cited, but we agree with sort of the tenor of the questions on that. Second, with respect to the ACA standards and Bell v. Wolfish, as cited in our brief, Supreme Court made clear those are bold and not constitutional minima. The third point is that the standards that apply to an Eighth Amendment claim- and this somewhat relates to the defendants' new conduct question, too- the standards themselves are incredibly vague. It's basically the standard is whether something violates the civilized- how is that supposed to give prison officials any kind of fair warning, especially when the case law doesn't? Second, finally, counsel made the point about the stabbing incident, but if you actually look at the testimony, it said transcript 121 through 127. There were two incidents. One was the urine on the floor, and our point was that- and we made it to the district court- that could happen in any cell. There are toilets in all the cells. There could be urine on the floor, and his obligation was to prove that this particular cell caused him a risk that would not have been elsewhere, so they didn't make that showing, and that's relevant. This cell had two toilets, didn't it? It did, but again, I think that doesn't materially mean there couldn't be urine on the floor in any of the cells, and the second incident, there was a fight when somebody said, don't touch my stuff. Well, that could happen in any cell, and the district court refused to allow any kind of evidence about what could happen in other cells, so we didn't even get a chance to make that argument. So, I don't want to extend beyond my time, but if the court has any other questions about anything, I did have one final point to make about Bivens if I could have 15 seconds, and that is in addition to the- so, if you agree with us that this is a new context, I think it is, because of all the reasons we've said, and it's a different standard, as we just explained, then special factors clearly counsel hesitation on recognizing a new claim here for several reasons, and I just want to mention two, and that's that as Abbasi makes clear, there are special factors when a plaintiff has the ability to obtain relief through injunctive actions or habeas, and the plaintiffs here have given no indication whatsoever, no basis. You're well beyond your 15 seconds. We'll take the matter under advisement, and thank you both for your arguments. We'll turn to-